Chief Justice Robertson
delivered the Opinion of the Court.
Tiie heirs of William Johnson, deceased, filed a bill in chancery against James Johnson., who had been their guardian and the administrator of their father’s esiatet and also against his sureties for a settlement of his accounts. Afterwards, they filed an amended bill, in which they alleged that the legislature of Kentucky having, in the session 1817-18, passed an act authorizing their said guardian to sell all or any of the lands which had descended to them from their grand father, Robert John *365 son, he afterwards, pursuant to said act, sold their ill-terest in a tract of land on the Ohio river, and gave a bond for the title. They therefore prayed a decree against him, on that account, and also against John Payne and John T. Johnson, who, as the amended bill alleged, had become his sureties in a bond executed in the county court of Scott county, conformably with the Requisition of the act of assembly, for their indemnity for any land which might be sold in virtue of the authority vested by the act. They also made William and Simon Robertson, who bought the land, defendants, and pray’ed for a restitution of their land, unless they should be able to get the consideration.
Janies Johnson having died, they also prayed a revi-vor against his heirs, alleging that, though lie had been dead more than a year, no administrator liad been appointed.
James‘Johnson’s heirs did not answer the amended bill.
John T. Johnson answered, and resisted any decree against himself, on three grounds : — first, because, as he insisted, Janies Johnson had never sold any' interest of the complainants in land, but that he had sold his own joint and personal interest only : — secondly, because, as lie contended, the bond which he and John Payne had signed, in 1818, as the suretiesof James Johnson, was only an ordinary guardian’s bond, and did not, therefore, bind them for more than fidelity in discharging the ordinary duties of guardian; and, thirdly, because the name of Joel Johnson, who, as a joint obligor, (together with Jadíes Johnson and W. Ward,) had subscribed the bond for a title to the land sold to William and Simon Robertson, had been without his (J. T. Johnson’s) knowledge or consent, or the knowledge or privity of James Johnson, erased, and that, therefore, the bond had become a nullity.
The Robertsons made their answer a cross bill; alleged that they had bought the entire title to the land, and had paid to James Johnson the whole price, and therefore prayed for a title, or for a restitution of the money which they; had paid.
Decree of the circuit court.
Appeal.
Auy one of several against whom a decree, or judgment, is rendered, may appeal. Such appeal brings up the hole case, and the appel lant is liable for the whole, by his appeal bond. In a writ of error, all must unite, but if any are unwilling to incur the'risque of costs damages, they may have a .severance, and be exonerated from that liability. Bond for conveyance, and its construction.
William Johnson’s heirs, in their answer to the cross bill, consented that a conveyance should be made to the Robertsons, upon condition that they (the heirs) should be paid the consideration.
Payne and John T. Johnson, in their answers, resisted any decree against them, for any portion of the consideration, chiefly on the grounds already suggested, as be,ing contained in the answer of John T. Johnson.
By consent of parties, a conveyance was made to the Robertsons, subject to the final decree on the hearing of the cause.
By the decree afterwards rendered, on the cross bill, that title was virtually confirmed, and James Johnson’s heirs, and John Payne and John T. Johnson, as the sureties oí James Johnson, were directed to pay to William Johnson’s heirs the amount which, as the.court supposed, James Johnson had received for their interest in the land sold to the Robertsons.
To reverse that decree, this appeal is prosecuted by Payne and John T. Johnson only.
The appellees object that the appeal.cannot be sustained unless all those against whom the decree was rendered, had united in the appeal. This objection cannot be sustained. Certainly', it would be more regular for all to unite in the appeal. But any of them had a right to appeal. There is this difference between an appeal and a writ of error : all against whom a judgment is rendered must unite in a writ of’error to reverse it, and if any of them desire to be exonerated from costs and damages incident to an affirmance, they may have a severance. But any one of several, against whom a joint decree is rendered, may appeal, and by his appeal bond, becomes responsible for the whole decree, and takes it ail op by bis appeal.
We will, therefore, proceed to consider other points involved'in the merits of the case.
First. The bond given to the Robertso-ns for a title is as follows : — “ Georgetown, August 26th, 1818 — We have this day sold to Simon Robertson and William Robertson, our interest in the tnjet of land on the Ohio river, in Gallaftin county, iVosby’s bottom, the same being five hundred and seventy acres, be thp same mo're or *367 less, for the consideration of thirteen thousand dollars; for which sum, notes are now given ; and peaceable possession is to be given to the said Robertsons, on the 15th day of March next ; at which time the first payment is to be made ; the deed is to be a general warranty, and to be made when the last payment is completed, which is in two years after the first payment. Witness our hands and seals, the date above.
A guardian and his wards, with others, are joint owners of a tract of land ; he is authorized by an act of assembly to sell their real estate; hep' ithothers) signs a bond,the tenor of vhieh hinds those who sign it to convey ‘ ouv[their] interest’ in the land, give possession and a general warranty deed : held, that this bond (signed by the guardian without referring to his fiduciary character) imposed no obligation on him, or his wards, to convey their title.'
If the tenor of a guardian’s bond is such as to hold him accountable for the proceeds of the real estate of his wards, which he was authorized to sell, the manner of the sale is immaterial : if it be even by verbal contract, and he receives the money, and they are willing to confirm the sale, he and his sureties will be answerable oa the bond-
John T. Johnson, (Seal)

Attorney in fact for James Johnson.

Test — Sebret Offutt. (Name torn out.)
W. WARD, (Seal)
For himself and heirs of Sally Ward, deceased.”
• It seems that the tract of land thus described, had been allotted to James Johnson, Joel Johnson, the heirs of William Johnson and the heirs of Mrs. Ward, the wife of William Ward, who had also been authorized by an act of assembly, to sell the land of his children ; and it appears, also, that Joel-Johnson had signed the bond, but that, afterwards, he and the Robertsons rescinded the contract as to his interest, and thereupon erased his name and seal.
Whatever may have been the actual intention of the parties, the bond cannot with propriety be construed as importing any thing more, than that James Johnson sold his own individual interest only. The description of quantity, and the covenant to give possession, and make a general warranty deed, are not inconsistent with this interpretation, but may mean only, that they had a joint interest in the tract of five hundred and seventy acres, of which they would give possession, and for which they would make a conveyance by deed of general warranty. James Johnson is not described as guardian, nor is there any intimation in the bond, that he, any more than the other covenantors, sold any thing but his own interest. We presume that, had William Johnson’s heirs been disposed to withhold-their interest, there is nothing in the bond which could have divested them of it. Nevertheless, if their guardian, under the authority of the act of assembly, actually S9M their interest, even by a verbal contract, and they are willing to carry that *368 contract into effect, his sureties should not be exonerated from liability for the price which he received and failed to account for, if their bond would impose on them such liability for any sale whatever which he could have made.
If an agsnt sign" his own name, with descrip-tio personis added, (as J. T. ,T. attorney in fact for J. J.) to a bond for a conveyance: though this is but the bond of the agent, yet, if he was •'authorized to bind theprincipaljthe latí er may he held,in equity, to a specific execution.
An ordinary bond of a guardian renders him and his sureties liable to the wards for every obligation resulting from acts which he was legally authorized to perform; and if,when the bond was executed, he was authorized to sell therland, it secures the proceeds to them.
Erasure of an obligor’s name.
But the bond for a title is not proof of a sale by James Johnson of the interest of ins wards. Nor indeed would it have concluded James Johnson, as to his own interest, unless he had given John T. Johnson authority to subscribe the bond ; in which event, though the mode of signing might have made John T. Johnson responsible, yet, in equity, James might have been held to a specific execution.
Second. Though the record of the county court in which the bond was acknowledged, in 1818, by James Johnson, as principal, and by John T. Johnson and John Payne, as his sureties, states that the bond was executed pursuant to the special act of assembly, it is, in its style and tenor, an ordinary guardian’s bond ; and hence the sureties contend that, as an ordinary guardian had no power to sell the land of his wards, and as, by their bond, they were ¡round only for James Johnson’s authorized acts, as a guardian, they are not liable in consequence of any sale which he may have made of the land of the appellees.
This position cannot be maintained. Waiving any consideration resulting from the record of the county court, it seems to this court, that the bond rendered ail the obligors liable for any act which the.-guardian had legal authority to do at the date of the bond. The special act'of assembly had superadded to his ordinary power as guardian, the additional right to sell the land of his wards ; as guardian, that power was as effectually vested in him, as it would have been, had it been delegated by the general la|%y.to all statutory guardians; and, consequently, fids bond, executed after the passage of the special act, should be deemed coextensive, in its condition, with his power as guardian, whether that power was conferred by general or special law.
Third. And it is clear, that the erasure of the name of Joel Johnson, cannot effect the liability of Payne and J. *369 T. Johnson, for any money which James Johnson, as guardian, received for the land of his wards, if he did receive any.
There should be no decree against an infant without answer by guardian ad litem.
Defendants to a cross bill (other than comp’ts in the original bill) must be summoned, notwith standing they may have appeared in the cause, in some other attitude.
Reversal, for want of proper parties.
But the case was not properly prepared for a decree on the cross bill. James Johnson’s heirs did not answer either the amended bill of William’s heirs, or the cross bill of the Robertsons ; and some of them being infants, it was improper to render a decree without their answers by guardian ad litem. Moreover, they were not made parties to the cross bill, no subpoena having been served upon them. Wherefore, we shall not consider the merits of the cases, so far as they may be liable tc^ be hereafter affected by further preparation and proofs; jbut must reverse the decree, for want of proper parties, without intimating an opinion as to its propriety of impropriety (upon the facts now exhibited,) if theré had been no defect of parties.
It is therefore ordered and decreed by the court, that the decree of the circuit court, on the cross bill, be reversed, and the cause remanded for further proceedings.